Okay. Please, the court, counsel. Actually, appellants' opening and reply briefs have been pretty exhaustive. We don't really have anything to add. I think the record speaks loudly and clearly. This matter should have gone to trial. And on reviewing our briefs again this morning, there's really nothing else that I can say. I do have a question for counsel. Yes. What's your best case under California law that a adverse employment action occurred in this case? Well, in that regard, I assume that I cannot refer to a specific case for obvious reasons now. And another one of my reasons, I do have a slight hearing problem, I've discovered. But as to the adverse employment action, it seems to me, even though I'm not prepared to cite a specific California case now, I think that the actions taken have been so egregious and continuous that any application of any California case would find that these actions that have been taken against her have been adverse. She was denied a merit increase. She was denied a bonus. She was denied overtime. And constantly being subjected to this egregious type of harassment, humiliation, and ridicule that would not allow any person to perform would certainly be adverse. And no employee is required to be subjected to what she was, in fact, subjected to during that period of time. I apologize for not being able to cite a specific California authority. Thank you. Okay. Thank you, counsel. Okay. I'll reserve a couple minutes. If you may reserve some time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, my name is Jonathan Martin, and I am representing the defendant, Apelli, New York Life Insurance Company, in this matter. Your Honors, this case is about an employee who, like many employees in our nation's workplaces, experienced events at work that she didn't like, such as a performance review in which she was rated a solid performer. However, not every slight that an employee may experience at work constitutes an adverse employment action that is appropriate for redress in the courts. This is a case in which the allegations don't come anywhere near the level of seriousness that's required to establish any viable claims for relief. And Ms. Brown's own papers confirm this. She made numerous deposition admissions that directly nullify her claims. And just like she did in the district court, in her briefing to this court, she doesn't address those admissions at all. Indeed, when you read the statement of facts in her opening brief, a picture emerges of at most an unhappy employee who disagrees with the treatment that she received, and she believes that one or more of her colleagues had some kind of personal animus against her, but nowhere does she set forth any competent evidence that this alleged treatment was motivated by discrimination or retaliation, or that there was any fraud or any other of the claims that she alleges, such as intentional infliction of emotional distress. I want to start with a discussion of the sex discrimination claim, which is Ms. Brown's second cause of action. She admitted in her deposition that no similarly situated males were treated differently from her, and that's the way generally a plaintiff in a discrimination case has to establish differential treatment. She admitted in her deposition also that she knows of no derogatory statements that were made in connection with her gender. She also admitted that she has no evidence that any of the evidence giving rise to this claim, her poor performance review, incorrect information given to the United States Department of Labor, and keys taken away were fueled by gender discrimination. She admitted she had no evidence that any of that was motivated by gender discrimination. She alleges several other incidents of alleged sex discrimination, and we address those in detail in our brief. I'll just point to one as an example. She claims that a coworker named Vandenberg was a poor-performing employee, a male employee, who got a more favorable performance review than Ms. Brown did. But there's no evidentiary support for that in the record. She admitted in her deposition that she had no idea what his rating was, and there's absolutely no evidence in the record as to the quality of this coworker's performance. So to the extent she claims that this male employee was treated better, there's simply no evidence in the record to reflect that. Moving on to Ms. Brown's age discrimination claim, that's her first cause of action. She claims, for example, that access to the company's computer systems was denied, and she claims that there was an employee under 40 named Ascari who was allegedly permitted access. But she admitted in her deposition that she doesn't even know what Ms. Ascari's age was. And there's also no evidence as to whether this individual was similarly situated to Ms. Brown. Perhaps this individual was someone whose need for computers was different than hers. Without the evidence to show that these people are similarly situated and that Ms. Ascari, this comparative employee, was under the age of 40, this alleged incident just can't serve as the basis for an age discrimination claim. Also, as far as the computer access is concerned, she admitted that a coworker who was either 55 or 56 years old did keep her access. So that certainly doesn't support an age discrimination claim. And she also admitted that she didn't know whether the managers who kept access were under the age of 40. So, again, no evidence of any similarly situated employees treated differently. Also, there's no evidence in the record that this alleged denial of computer access was an adverse employment action. She doesn't discuss in her deposition, nor is there anything in the record to show to what degree did she rely on these computers to be able to perform her job. All she says was she was denied access. Well, she never explains whether that caused her to be unable to perform her job. In fact, I don't think there's anything in the records. Kagan. Excuse me for interrupting, but I don't seem to have the excerpts here, or at least I can't find them. This was a summary judgment? Correct. You moved for summary judgment? Correct. You attached to your summary judgment what? We included the pages from Ms. Brown's deposition that were relevant, yes. And was there a response to the summary judgment? There was an opposition file. That's correct. Opposition. And did it cite to the deposition? Or did it – what support did it – what documents were attached to? It did cite to the deposition on several occasions, but not to the particular admissions that I've been addressing up to this point. So there is some discussion of her deposition testimony, but I don't think any of that does anything to create triable issues of fact in this case. Just getting back to one additional point on the age discrimination claim, she claims that her keys were taken away because of her age. Well, the undisputed evidence in the record here is that everyone at her job level got their keys taken away. Only individuals at a higher job level were entitled to retain their keys. So there's simply no evidence of age discrimination on that point because there was uniform treatment across the – these particular job levels. I'll move on to Ms. Brown's national origin claim. She claims she admits that she never heard any derogatory comments at work about her national origin. She claims that she was removed from a team leader position because of, quote, the resentment by a majority of the team members to her as a Canadian national origin, close quote. Well, there's absolutely no evidence in the record as to what the alleged motivations of these people were in connection with her alleged removal as the leader of this team. That's pure speculation and conjecture on her part. There is no evidence from any of these individuals regarding their motivations. So to the extent that she tries to use this alleged incident to support her national origin claim, I think that effort fails. There's also the issue of the same actor principle, which simply states that a person or supervisor who treats a plaintiff employee well at some point is extremely unlikely to then turn around and become a discriminator against that person. And that's particularly true in this case. We have a supervisor named Diane Schaller who treated her very well for several years leading up to the alleged incident in question in this case. Ms. Schaller gave Ms. Brown several outstanding performance reviews for the years 1997, 1998, and 1999. She gave Ms. Brown reviews of distinguished performer for each of those years. She signed letters in support of Ms. Brown's immigration from Canada to the United States. So the principle here would be that Ms. Schaller, in having helped her in all those instances, is extremely unlikely to then turn around and decide that she's going to discriminate against this very same individual. This is an action under California's Fair Employment Housing Act? That's correct, Your Honor. What's the state of the case law in California with respect to whether a negative performance review standing alone can constitute an adverse employment action? I believe the current standing of the law is that if you look at the consequences of the negative performance evaluation, and I believe there's a case on point on this called Akers, which we cite in our brief, the Akers case says that a negative performance evaluation, or I think in that particular case it was a counseling memorandum, if it can be shown that such proceeding has a direct and substantial and material adverse impact on the person's job, then it may qualify as an adverse employment action. So just taking the Akers case as an example, I think the court determined in that case that because of the counseling memo that was issued to the plaintiff in that case, there was a reasonable possibility that the plaintiff's advancement opportunities would be inhibited. So I think in that case the court determined that at the very least there was a tribal issue in terms of whether the per that counseling memo qualified as an adverse employment action. Moving on to the plaintiff's retaliation claim, one of the prongs of or one of the retaliation tests is whether there was prohibited or, I'm sorry, protected activity. And here the plaintiff admitted at her deposition that she never complained about any form of discrimination that's prohibited by the Fair Employment and Housing Act. She never complained about age discrimination. She never complained about gender discrimination. She never complained about national origin discrimination. At most she complained that she didn't like her performance review. And that's not protected activity under the Fair Employment and Housing Act. She admitted directly that she never made any complaints about unlawful discrimination. So for that reason alone, the district court properly dismissed the plaintiff's Ms. Brown's retaliation claim. And again, I would point out that to the extent that Ms. Brown is relying on the same incidents that I discussed earlier in support of her other claims, those events did not constitute adverse employment actions. Just getting back to the computer example, no evidence that that had any adverse effect on her position. I think we understand your position. Are there further questions? Thank you, counsel. Thank you. Mr. Allard, do you wish to add anything? Okay. Just a couple of comments. Plaintiff, the appellate here took a horrible deposition. In fact, she was terrified. In fact, on three separate occasions, her deposition had to be continued simply because she was not able to sustain the question that she was in such a fragile emotional condition. She was just filled out about that. But that, notwithstanding that, the evidence that we've presented here demonstrates that she, in fact, was subjected to all of the types of discrimination that's been alleged. And we've set it out exhaustively. This woman was an exemplary employee and had been, had a distinguished rating for three years up until Mr. Ziegler arrived, and she decided down to the lowest rating possible. As to her complaints, she did continue to complain. I doubt very well if she specified you're doing this to me because I'm Canadian, you're doing this to me because I'm a woman, because I'm over the age of 40 and all. The fact is that we have substantial evidence and record to show that this is consistent with the pattern and practice that New York Life has taken against all women in that West Coast service center. It's regrettable that she was not able to give a better deposition, but she did the best that she could, and we do the best we can with the record that we have. Yes. That's all we have. All right. Thank you, counsel. The case just argued is submitted for decision. We'll hear the last case on the calendar, United States v. Kaczynski. Thank you. Thank you.
judges: Schroeder, Canby, Hawkins